IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHNNIE MCDOWELL,<br>　　　　Petitioner,<br>　　v.<br>EDWARD KLEM, et al.,<br>　　　　Respondents. | C.A. No. 07-88 Erie<br>District Judge Cohill<br>Chief Magistrate Judge Baxter |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.　RECOMMENDATION**

It is recommended that the petition for writ of habeas corpus be denied and that a certificate of appealability be denied.

**II.　REPORT**

Petitioner Johnnie McDowell has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. [Document # 5]. He is presently incarcerated at the State Correctional Institution in Pittsburgh, Pennsylvania. In August 2002, a jury empaneled by the Court of Common Pleas of Erie County found him guilty of murder in the second degree, robbery, conspiracy to commit robbery, and related crimes. He is serving a sentence of life imprisonment for the second-degree murder conviction, plus an aggregate sentence of 147-294 months for the other convictions.

Petitioner raises the following claims for relief, which he has explained more fully in his *Memorandum In Support of Pro Se Petition Filed Pursuant to 28 U.S.C. § 2254* ("*Memorandum*") [Document # 6]:

　　(1)　The prosecution's peremptory strike of prospective juror James Tate was based on race in violation of Batson v. Kentucky, 476 U.S. 79 (1986); and

　　(2)　He received ineffective assistance because his trial counsel, Vincent P. Nudi:

>   (a) failed to advance the "abandonment of scheme defense," and failed to request a jury instruction regarding that defense; and,
>
>   (b) failed to object to the trial court's response to a jury question and failed to propose an alternative response to that question;

Id. at 13.[1]

## A. Relevant Procedural and Factual History

Petitioner's trial commenced in August 2002, and he was tried alongside co-defendant Mack Hill ("Hill"). The Honorable William R. Cunningham presided over the trial, and Vincent Nudi, Esquire ("Nudi") was Petitioner's defense counsel. The charges against Petitioner arose from his participation in the armed robbery of Rolando Ruiz ("Ruiz") on October 2, 2001, and, on the following day, the armed robbery and shooting death of Darrell Dickerson ("Dickerson"). The Commonwealth maintained that Petitioner lured both Ruiz and Dickerson into false drug deals so that Hill could complete the armed robberies of them. The Commonwealth presented evidence to support its theory that Hill shot Dickerson with Petitioner's .357 Magnum, and it asserted that Petitioner was guilty of second-degree murder under either the accomplice liability or co-conspirator liability theory.

On August 21, 2002, the jury announced its verdict. With respect to the crimes against Dickerson, the jury found Petitioner guilty of second-degree murder, robbery, conspiracy to commit robbery, receiving stolen property, and carrying a firearm without a license. With respect to the crimes against Ruiz, the jury convicted Petitioner of conspiracy to commit robbery and robbery. The jury reached similar verdicts in the case against Hill, who was also convicted of second-degree murder in the killing of Dickerson (the Commonwealth had urged the jury to convict Hill of first-degree murder).

---

[1] This Court has numbered some of Petitioner's claims differently then he does in his *Memorandum*. Claim 1 is numbered the same in this Report & Recommendation and in Petitioner's *Memorandum*. Claim 2(a) herein is set forth in Petitioner's *Memorandum* as Claims 4 and 5, and Claim 2(b) herein is set forth in the *Memorandum* as Claims 2 and 3.

2

Assistant Public Defender Ines M. Massella was appointed to represent Petitioner on direct appeal. On April 11, 2003, the trial court issued an opinion denying post-verdict motions. (State Court Records ("SCR") No. 33, Commonwealth v. McDowell, No. 149 A&B and 150 of 2002, slip op. (C.P. Erie, April 11, 2003), hereinafter "*Post-Verdict Motions Opinion*"). On December 10, 2003, the Superior Court issued a Memorandum Opinion affirming Petitioner's judgment of sentence. (SCR No. 35, Commonwealth v. McDowell, No. 70 WDA 2003, slip op. (Pa.Super. Dec. 2003)). Petitioner did not file a petition for allowance of appeal in the Supreme Court of Pennsylvania.

On or around February 26, 2004, Petitioner filed a timely *pro se* motion for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*. (SCR No. 36). The PCRA Court (Judge Cunningham) appointed William J. Hathaway, Esquire ("Hathaway"), to represent Petitioner, and Hathaway filed a supplement to the PCRA motion in May 2004. (SCR No. 39).

On September 17, 2004, the PCRA Court issued a *Notice of Intent to Dismiss PCRA* pursuant to Pennsylvania Rule of Criminal Procedure 907. (SCR No. 41). It advised Petitioner that his claims would be denied and that there was no issue of material fact requiring an evidentiary hearing. The court further advised Petitioner that he had twenty days to respond to the proposed dismissal. (Id.) No response was filed, and when the twenty days expired on or around October 7, 2004, the PCRA Court issued an Order denying PCRA relief for the reasons set forth in the *Notice Of Intent To Dismiss PCRA*.[2] (SCR No. 42).

On October 19, 2004, Petitioner, who was unsatisfied with Hathaway's representation of him (see SCR No. 43), filed a *pro se* notice of appeal (SCR No. 44). The matter proceeded as if Hathaway had been removed from the case, and the PCRA Court issued an order notifying

---

[2] In the meantime, on October 5, 2004, Petitioner sent to the trial court via first-class mail a *pro se* motion in which he stated that he and Hathaway had had a breakdown in their relationship and as a result he intended to file his own response to the *Notice Of Intent To Dismiss PCRA* and asked for an extension to do so. (SCR No. 43). The motion was received by the trial court on October 11, 2004, several days after the PCRA Court had issued the Order denying PCRA relief. (Id.) The PCRA Court did not grant Petitioner's request for an extension.

3

Petitioner that he had fourteen days in which to file a concise statement setting forth the issues that he was raising on appeal pursuant to Appellate Rule 1925(b). (SCR No. 45).

On or around November 4, 2004, Petitioner filed his *Statement of Matters Complained of on Appeal*. (SCR No. 46). In addition to raising claims that he had raised in his PCRA motions, he also raised new claims in which he contended that Hathaway was ineffective as PCRA counsel. (Id.) Petitioner also requested an additional twenty days to file a supplement because he was still "slogging through the notes of testimony and other record." (Id. ¶ 20). The PCRA Court did not grant Petitioner's request for permission to file a supplement.

On November 15, 2004, the PCRA Court issued its *Rule 1925(b) Opinion* advising that Petitioner's appeal should be denied. (SCR No. 47). The court explained that it had already addressed in its *Notice of Intent to Dismiss PCRA* Petitioner's claims of trial/appellate counsel ineffectiveness, and that it was incorporating the legal analysis and conclusions contained in that previous decision in its *Rule 1925(b) Opinion*. (Id. at 1). The only new claims that the court addressed were Petitioner's claims of Hathaway's alleged ineffectiveness. The PCRA Court denied those claims on the merits. (Id. at 1-2).

Although the *Rule 1925(b) Opinion* was signed on November 15, 2004, it was not mailed to Petitioner until November 23, 2004. (See Court of Common Pleas' docket sheet,[3] entries for November 22 and 23, 2004). Petitioner contends that on November 16, 2004, he sent to the PCRA Court via first-class mail a document that he entitled *Supplemental Concise Matters Complained of on Appeal*. However, the PCRA Court had not granted him permission to file a supplement, and by that date the PCRA Court already had issued its *Rule 1925(b) Opinion* (although it had not yet been mailed to Petitioner). The *Supplemental Concise Matters Complained of on Appeal* was not docketed in the Court of Common Pleas and it is not contained in the state court record. Petitioner has attached it as an exhibit to his *Memorandum*

---

[3] The Court of Common Pleas' docket sheet is located at the beginning of the SCR.

[Document # 6].[4]

On November 10, 2005, the Superior Court issued a Memorandum Opinion in which it affirmed the denial of PCRA relief. (SCR No. 54, Commonwealth v. McDowell, No. 1860 WDA 2004, slip op. (Pa.Super. Nov. 10, 2005)). The Supreme Court of Pennsylvania denied Petitioner's subsequent petition of allowance of appeal on June 21, 2006.

Next, on or around April 25, 2007, Petitioner filed his *pro se* petition for writ of habeas corpus with this Court. [Document # 5]. Respondents filed a motion to dismiss contending that Petitioner's habeas petition was untimely under the one-year statute of limitations set forth in The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2244(d). This Court denied Respondents' motion because they had calculated the limitations period incorrectly and Petitioner's habeas petition had been timely filed. [Document # 19]. This Court directed the Respondents to file an Answer responding to the claims set forth in the petition. This accomplished [Document # 26], the case is now ready for disposition.

### B.      Standard of Review

In describing the role of federal habeas proceedings, the Supreme Court, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are

---

[4] On December 14, 2004, the Superior Court remanded the case to the PCRA Court to conduct a colloquy with Petitioner to determine if his request to proceed *pro se* on appeal was knowing, voluntary, and intelligent. (SCR No. 48). The Superior Court further directed that: "If the [PCRA] court finds that [Petitioner] meets the appropriate standard, the [PCRA] court shall enter an order allowing [Petitioner] to proceed *pro se* and allowing the withdrawal of counsel [Hathaway], and shall insure that [Petitioner] is provided with all materials of record necessary for the prosecution of the instant appeal." (Id.)

Upon remand, the PCRA Court conducted the colloquy, granted Petitioner's request to proceed *pro se* on appeal, and discharged Hathaway as counsel of record. (SCR No. 49). Thereafter, Petitioner filed a motion with the PCRA Court requesting that it provide him with the transcripts from his case. (SCR No. 50). On June 15, 2005, the PCRA Court denied that request because it had supplied Petitioner with a copy of the trial transcript in September 2004. (SCR No. 51; see also SCR No. 40; and, Court of Common Pleas' docket entries for September 7 and 10, 2004). Petitioner filed a follow-up motion in which he acknowledged that the court had sent him the trial transcript, but stating that he required the transcripts from his preliminary hearing, suppression hearing, pre-trial omnibus hearing, and "discovery." (SCR No. 52). The PCRA Court denied the motion on April 19, 2006. (SCR No. 53).

5

> observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

Subsequent to that admonition, Congress enacted AEDPA which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). AEDPA provides, in relevant part, that when a state court has adjudicated a claim on the merits, a federal habeas court shall not grant the writ unless the state court's adjudication of the claim:

> resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1). See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004). Application of this standard of review proceeds in two steps: the court must identify the applicable Supreme Court precedent and determine whether the state court's adjudication of the claim is contrary to it.[5] If it is not, then the court must determine whether the state court's adjudication was an unreasonable application of that law.[6] See, e.g., Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004); Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000).

If the state court's adjudication was not "contrary to or an unreasonable application of[ ] clearly established Federal law," 28 U.S.C. § 2254(d)(1), a petitioner can receive habeas relief only if he shows that the state court's adjudication: "resulted in a decision that was based on an

---

[5] "A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert, 387 F.3d at 234 (quoting Williams, 529 U.S. at 405-06).

[6] "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Lambert, 387 F.3d at 234 (quoting Williams, 529 U.S. at 407).

6

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(2). Within this overarching standard, a petitioner may attack specific factual determinations that are subsidiary to the ultimate decision under 28 U.S.C. § 2254(e)(1); Lambert, 387 F.3d at 235. Section 2254(e)(1) instructs that "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

### C. Discussion
#### 1. Claim 1 – The Batson Claim

In Claim 1, Petitioner, who is African-American, contends that the prosecutor used a peremptory strike in a racially discriminatory manner during jury selection. He argues that this violated the Equal Protection Clause as interpreted by the Supreme Court in Batson v. Kentucky, 476 U.S. 79 (1986). Batson established a three-part burden shifting framework to guide a trial court's constitutional review of peremptory strikes, which the Supreme Court articulated as follows:

> First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive or even plausible"; so long as the reason is not inherently discriminatory, it suffices. Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion rests with, and never shifts from, the opponent of the strike."

Bond v. Beard, 539 F.3d 256, 264 (3d Cir. 2008), (quoting Rice v. Collins, 546 U.S. 333, 338 (2006), *petition for cert. filed*, 77 U.S.L.W. 3577 (U.S. Apr. 06, 2009) (No. 08-1242)). See also, Miller-El v. Dretke, 545 U.S. 231 (2005).

During individual *voir dire* at Petitioner's trial, prospective juror James Tate stated that he knew Petitioner's father. Tate explained that they grew up near each other, knew each other

7

"fairly well" when they were younger, and that their paths still crossed about once a month. (Day One Trial Tr. at 233-34). The prosecutor, Assistant District Attorney James Vogel, used a peremptory challenge to strike Tate, who was the only African-American in the first jury pool (which was comprised of fifty persons). (Id. at 241-42). Counsel for Petitioner's co-defendant, Hill, raised a Batson challenge, and Vogel responded that he was using a peremptory strike because of "[t]he relationship between [Tate] and defendant's father[.]" (Id. at 241). The trial court accepted this explanation and rejected the Batson challenge. (Id. at 242).

The trial court revisited the Batson claim on post-trial motions. It held that Tate "was not stricken because of his race." (SCR No. 33, *Post-Verdict Motions Opinion* at 5). The trial court set forth why it accepted that the prosecutor had acted in a race-neutral manner:

> The Commonwealth explained the potential juror was stricken because of his relationship with Appellant's father. During questioning it was revealed that the prospective juror knew, went to school with as well as grew up in the same neighborhood as Appellant's father. The prospective juror also stated that he still saw Appellant's father occasionally around town. Therefore, the exercise of the Commonwealth's preemptory [sic] strike was based on the juror's relationship to Appellant's father, which is certainly race-neutral....

(Id. (internal transcript citations omitted)).

Petitioner raised the Batson claim on direct appeal, and the Superior Court affirmed. It recognized that on appeal, the trial court's ruling that the prosecution provided a credible, race-neutral reason for striking Tate must be affirmed unless it is clearly erroneous. (SCR No. 35, McDowell, No. 70 WDA 2003, slip op. at 4 (citations omitted)); see also Snyder v. Louisiana, __ U.S. __ , 128 S.Ct. 1203, 1207-08 (2008) (citations omitted). The Superior Court held that Petitioner failed to satisfy the third step of the Batson inquiry, *i.e.*, he failed to prove that the prosecution had purposefully discriminated when it used a peremptory challenge on Tate. (Id. at 5-6). It noted that Petitioner "failed to present any factor or reason to support his contention that the strike had been used in a racially-impermissible manner." (Id. at 6).

Because the state courts adjudicated Petitioner's Batson claim on the merits, this Court must review this claim under AEDPA's deferential standard of review. 28 U.S.C. § 2254(d) & (e); see also Bond, 539 F.3d at 264, 268-75. The state courts' decisions were not "contrary to"

8

Batson, as both the trial court and the Superior Court evaluated the claim through Batson's three-part burden-shifting framework. Williams, 529 U.S. at 406 ("a run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."). Thus, the issue before this Court is whether the state courts' decisions involved an "unreasonable application of" Batson, 28 U.S.C. §2254(d)(1), or whether the state courts' factual findings were unreasonable in light of the record before them, id. § 2254(d)(2). This Court also must presume the trial court's crediting of the prosecutor's explanation was correct unless Petitioner rebuts the "presumption of correctness by clear and convincing evidence." Id. § 2254(e)(1). See Bond, 539 F.3d at 264, 268-75; Miller-El, 545 U.S. at 240.

Petitioner asserts that the prosecutor's explanation was pretext and therefore the state courts' decisions were unreasonable, both legally and factually. In support of this argument, he points out that although Tate stated that he knew Petitioner's father, he also intimated that they were merely acquaintances. Tate also said that he could be fair and impartial if selected for the jury. The trial court heard Tate's statements, however, and credited the prosecutor's explanation that he struck Tate for a race-neutral reason.

There is no basis for this Court to disturb the trial court's evaluation of the prosecutor's credibility. The Supreme Court recently reiterated that trial court's "pivotal rule in evaluating Batson claims[,]" noting that:

> Step three of the Batson inquiry involves an evaluation of the prosecutor's credibility, and the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge. In addition, race-neutral reasons for peremptory challenges often invoke a juror's demeanor (*e.g.*, nervousness, inattention), making the trial court's first-hand observations of even greater importance. In this situation, the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor. We have recognized that these determinations of credibility and demeanor lie peculiarly within the trial judge's province, and we have stated that in the absence of exceptional circumstances, we would defer to the [trial court]."

Snyder, 128 S.Ct. at 1208 (internal quotation marks and citations omitted, bracketed text in

9

original). Although a reviewing court does not automatically defer to the trial court's credibility determinations, see Id. at 1209-12; Miller-El, 545 U.S. at 240, on the record in this case this Court cannot overturn the trial court's determination, as Tate said that he knew Petitioner's father fairly well when they were younger and that they still ran into each other about once a month. Petitioner has failed to meet his burden of showing purposeful discrimination, and the state courts' decisions denying this claim were neither an "unreasonable application" of Batson nor were they factually unreasonable in light of the record. Therefore, Petitioner is not entitled to relief on Claim 1.

## 2. Claim 2(a) – Failure to Pursue "Abandonment of Scheme" Defense

In Claim 2(a), Petitioner contends that Nudi was ineffective because he failed to advance an "abandonment of scheme defense," and because he failed to request a jury instruction regarding that defense. The first time that Petitioner asserted this claim before the state court was in his *Supplemental Concise Matters Complained of on Appeal*.[7] The Superior Court held that Petitioner waived it at two separate points during the PCRA proceeding.[8] First, the Superior Court held that Petitioner waived the claim because he had not raised it to the PCRA Court in either his *pro se* or supplemental PCRA motion. (SCR No. 54, McDowell, No. 1860 WDA 2004, slip op. at 6 (citing Pa.R.A.Pro. 302(a) ( "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Second, the Superior Court held that Petitioner waived Claim 2(a) for the separate and independent reason that he failed to raise it in his *Statement of Matters Complained of on Appeal*. (Id. (citing Commonwealth v. Lord, 719 A.2d 306 (Pa. 1998) (an issue is waived if it is not raised in the statement of matters complained of on appeal)).

---

[7] As set forth previously, the PCRA Court did not give Petitioner permission to file a supplement to his *Statement Of Matters Complained Of On Appeal*, and Petitioner's submitted the supplement after the *Rule 1925(b) Opinion* had been issued.

[8] In the Superior Court Memorandum Opinion, Claim 2(a) herein is set forth at Claims 3 and 4.

10

Because the Superior Court denied Petitioner relief on Claim 2(a) based upon state procedural rules of waiver, Respondents contend that it is barred from federal habeas review under the "procedural default" doctrine. This doctrine is "grounded in concerns of comity and federalism[.]" Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). It prohibits federal habeas courts from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is independent of the federal question and "adequate" to support the judgment. See, e.g., Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman, 501 U.S. at 732.

The Superior Court's decision was based on the application of state procedural rules and was "independent" of federal law. The waiver rules applied by the Superior Court (Appellate Rule 302(a) and Commonwealth v. Lord's waiver rule) were also "adequate." A state rule is "adequate" if: (1) the rule speaks in unmistakable terms; (2) the state appellate court reviewing the petitioner's claim refused to review it on the merits because the petitioner failed to comply with the rule; and (3) the state court's refusal was consistent with other decisions. Nara v. Frank, 488 F.3d 187, 199 (3d Cir. 2007); Kindler v. Horn, 542 F.3d 70, 78 (3d Cir. 2008), *cert. granted*, 77 USLW 3449 (U.S. May 18, 2009) (No. 08-992) (a state procedural rule "that is consistently applied in the vast majority of cases is adequate to bar federal habeas review even if state courts are willing to occasionally overlook it and review the merits of a claim for relief where the rule would otherwise apply."); see also Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (a state procedural rule is "adequate" if it is "firmly established and regularly followed" at the time that the alleged procedural default occurred). The Superior Court's application of Appellate Rule 302(a) was "adequate," since that rule clearly states that issues not raised in the lower court are waived, and since at the time of Petitioner's waiver (which would have been when he filed his *pro se* and supplemental PCRA motions), Pennsylvania appellate courts regularly held that claims were waived when those claims were raised for the first time on appeal. See 20 G. Ronald Darlington *et al.*, Pennsylvania Appellate Practice § 302:1 (2008-09 ed.) (collecting cases and explaining that Pennsylvania courts have applied Appellate Rule

11

302(a) "consistently" and that "[a]lthough exceptions to the general rule have been permitted, they occur primarily where either important issues of public policy are concerned or where counsel had no opportunity to raise an issue below."). Likewise, the Superior Court's application of the waiver rule set forth in Commonwealth v. Lord was "adequate" because at the time Petitioner filed his *Statement of Matters Complained of on Appeal*, Pennsylvania case law put him on notice that he must include all of the issues that he wanted to raise on appeal in that document. See 20A Pennsylvania Appellate Practice, *supra*, § 1925:1 (collecting cases, including Commonwealth v. Lord, and explaining that at the relevant time period here Pennsylvania courts applied a "strict liability" approach, which required that claims not raised in the statement of matters complained of on appeal were waived).[9]

A petitioner whose constitutional claim has not been addressed on the merits in state court due to the failure to comply with a state procedural rule can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.,* that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and actual prejudice.[10] Coleman, 501 U.S. at 750; see also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986). Petitioner has not shown that there was any factor that precluded him from properly raising Claim 2(a) to the state courts. He asserts that he could not raise the claim in a timely fashion because he did not receive the trial transcript until September 2004.

---

[9]

The Court notes that even if Commonwealth v. Lord's waiver rule was not "adequate," Petitioner's claim still would be procedurally barred because the Superior Court's application of Appellate Rule 302(a)'s waiver rule was "adequate," and it cannot be disputed that Petitioner did not properly raise Claim 2(a) to the PCRA Court in either his *pro se* PCRA motion or in the supplemental PCRA motion.

[10]

A federal court may also reach the merits of a procedurally defaulted claim if the petitioner establishes a "fundamental miscarriage of justice" will occur if the default is not excused. The "fundamental miscarriage of justice" exception applies only in the "extraordinary" case in which the petitioner has presented new evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316, 324 (1995); see also House v. Bell, 547 U.S. 518 (2006); Goldblum v. Klem, 510 F.3d 204, 225 (3d Cir. 2007); Albrecht v. Horn, 485 F.3d 103, 121-27 (3d Cir. 2007); Hubbard v. Pinchak, 378 F.3d 333, 339-41 (3d Cir. 2004). This is not one of those extraordinary and rare cases in which the fundamental miscarriage of justice exception is implicated.

However, the PCRA Court sent him the trial transcript as soon as he asked for it, and he could have requested it earlier if he needed it prior to filing his *pro se* PCRA motion in February 2004. Moreover, Petitioner raised several other claims of ineffective assistance in the *pro se* PCRA motion without having the trial transcript, and so there is no reason to excuse him for not raising Claim 2(a) at that time. Finally, Hathaway presumably had access to the trial transcript, and so he could have raised Claim 2(a) in the supplemental PCRA motion if he thought that claim was worth pursuing.[11]

In conclusion, Claim 2(a) is procedurally defaulted. For this reason, it should be denied.

### 3. Claim 2(b) – Failure to Object to Trial Court's Response to a Jury Question

#### a. Background

As set forth above, the prosecutor contended that Petitioner was criminally responsible for acts committed by Hill under either the theory of co-conspirator liability or accomplice liability. During its initial charge to the jury, the trial court instructed on both theories of liability (Day Five Trial Tr. at 88-90), in addition to principal liability. Petitioner does not challenge the instructions that were given to the jury during the initial charge.

During its deliberations, the jury submitted a two-part question. First, it asked the trial court to redefine criminal homicide. Then, it asked:

> "If one party is determined to be guilty, is the individual who owns the weapon also considered to be guilty of homicide?"

(Id. at 129). The following exchange then occurred:

> The Court: Now, I'm a little uncomfortable answering that [the second part of the question] directly.
>
> Vogel: Yes, I agree.

---

[11] Petitioner cannot rely on any claim that Hathaway's decision not to raise Claim 2(a) in the supplemental PCRA motion establishes "cause" for his default. To qualify as "cause," an attorney's ineffectiveness must rise to the level of a Sixth Amendment violation. Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002). Because Petitioner has no Sixth Amendment right to representation during his PCRA proceedings, any alleged ineffectiveness on Hathaway's part during that proceeding cannot establish cause for the procedural default. Id. (citing Commonwealth v. Finley, 481 U.S. 551 (1987); Coleman, 510 U.S. at 752).

13

> The Court: I mean, I have no problem framing an answer in terms of what is accomplice liability, what is co-conspirator liability.
>
> Vogel: I think that's what would be fairest to both sides.

(Id. at 129-30). Nudi suggested that the trial court just answer "No" to the second part of the question. (Id. at 131). The trial court declined to take this approach, and it instructed the jury again on the theories of liability. (Id. at 131, 139-42, 144-45).

In Claim 2(b), Petitioner contends that the trial court's answer to the jury's question was non-responsive, and that because the trial court did not answer "No" he was prejudiced. He claims that Nudi was ineffective because he did not object to the trial court's decision not to supply a direct response to the jury's question and that Nudi should have suggested an alternative instruction, such as "'mere' ownership of a weapon that is ultimately used in a crime does not prove guilt of conspiracy or felony-murder." (*Memorandum* at 19).

Petitioner raised this same claim in the supplemental PCRA motion that Hathaway filed on his behalf. (SCR No. 39 at 4). The PCRA Court addressed it on its merits in the *Notice Of Intent To Dismiss PCRA* (SCR No. 41), stating:

> The response to the jury's question was carefully framed so as not to prejudice Petitioner or taint the jury....
>
> The three forms of criminal liability [principal, accomplice, and co-conspirator] liability were then reviewed. A jury instruction will be upheld if it clearly, adequately and accurately reflects the law. Commonwealth v. Brown, 786 A.2d 961 (Pa. 2001). Consequently, Petitioner fails to demonstrate how the jury was tainted or how the previous jury instructions [given during the initial charge] were undermined, specifically where the standard instructions of criminal liability were given both times.
> - - -
> Petitioner does not present any other evidence which would establish that he was prejudiced or that any other action by trial counsel would have made the outcome any different. The record reflects the jury instructions were legally sufficient and that trial counsel was not ineffective in his representation of Petitioner at this stage of the trial.

(Id. at 10-11). The PCRA Court officially denied this claim in the October 7, 2004, Order denying PCRA relief. (SCR No. 42).

In the *Statement of Matters Complained of on Appeal* that Petitioner filed *pro se*, he once

14

again challenged the trial court's response to the jury's question, but instead of framing his claim as one of trial counsel's (Nudi's) ineffectiveness, he contended that his direct appeal counsel (Massella) was ineffective for failing to challenge on direct appeal the trial court's response to the jury's question. (SCR No. 46 ¶ 19). On November 15, 2004, the PCRA Court issued its *Rule 1925(b) Opinion* advising that Petitioner's appeal should be denied. (SCR No. 47). It explained that it had already addressed in its *Notice of Intent to Dismiss PCRA* Petitioner's claims of trial/appellate counsel ineffectiveness (including Claim 2(b)), and that it was incorporating the legal analysis and conclusions contained in that previous holding in its *Rule 1925(b) Opinion*. (Id. at 1).

In his brief to the Superior Court, Petitioner went back to claiming that Nudi (as opposed to Massella) was ineffective for failing to object to the trial court's response to the jury question and for failing to suggest an alternative response. (SCR No. 54, McDowell, No. 1860 WDA 2004, slip op. at 4-5 (quoting Petitioner's Appellant Brief at 2)).[12] The Superior Court denied this claim because it determined (incorrectly) that Petitioner had failed to raise it in his PCRA motions and had raised it for the first time in his *Supplemental Concise Matters Complained of on Appeal* (which the PCRA Court had not permitted him to file). (Id. at 6-7).

Respondents contend that the Superior Court's holding bars federal habeas review of Claim 2(b) under the procedural default doctrine. However, this Court should not apply the procedural default doctrine to this claim because Petitioner did raise it before the PCRA Court in his supplemental PCRA motion, and so the Superior Court erred when it determined that he had not. It may be that the Superior Court denied this claim because Petitioner phrased it in terms of appellate counsel's ineffectiveness in his *Statement of Matters Complained of on Appeal*, and as trial counsel's ineffectiveness elsewhere, but a fair reading of the Superior Court's decision indicates that it was operating under the mistaken belief that Petitioner had not raised this claim before the PCRA Court. Therefore, this Court will give Petitioner the benefit

---

[12] In the Superior Court's Memorandum Opinion, Claim 2(b) herein is set forth at Claims 1 and 2.

15

of the doubt and review Claim 2(b) on the merits. In so doing, this Court must evaluate the PCRA Court's adjudication of this claim under AEDPA's standard of review, 28 U.S.C. § 2254(d). See Fahy v. Horn, 516 F.3d 169, 197, 203 n.36 (3d Cir. 2008) (if the PCRA Court adjudicated the claim on the merits, AEDPA's standard of review applies).

### b. Legal Analysis

Petitioner's claims of ineffective assistance are to be analyzed under the "clearly established Federal law" for AEDPA purposes set forth in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Supreme Court held that in order to establish that counsel's service was constitutionally deficient, a petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) the petitioner suffered prejudice, meaning that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See also Wiggins v. Smith, 539 U.S. 510 (2003).

The PCRA Court applied the Pennsylvania legal standard equivalent to Strickland in evaluating this claim (see SCR No. 41, *Notice of Intent to Dismiss PCRA* at 3 (citing Commonwealth v. Ford, 809 A.2d 325 (Pa. 2002)). See also Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999) (the legal standard for evaluating ineffective assistance claims in a PCRA proceeding is the same as the federal Strickland standard)). Therefore, the PCRA Court's adjudication of this claim was not "contrary to" Strickland. Williams, 529 U.S. at 406; Werts, 228 F.3d at 202-04 ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent.").

The dispositive question, then, is whether the PCRA Court's adjudication was an "unreasonable application of" Strickland. It was not. First, Nudi did propose that the trial court answer "No" to the jury's question. Thus, contrary to Petitioner's contention, Nudi suggested an alternative answer to the jury's question, but the trial court declined to give it. Second, as the

16

PCRA Court noted, Petitioner has failed to show prejudice. The trial court determined that the best way to respond to the jury's question was to re-instruct on accomplice liability and co-conspirator liability. Petitioner does not argue that those instructions were incorrect under Pennsylvania law, he just asserts that by repeating them, the trial court suggested to the jury that it should find that one of those theories applied. This argument is not persuasive, and this Court cannot conclude that there is a reasonable probability that the outcome of Petitioner's trial would have been different but for Nudi's alleged ineffective assistance, much less that the PCRA Court's rejection of this claim was an "unreasonable application of" Strickland. Therefore, Claim 2(b) should be denied.

### D. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." In Slack v. McDaniel, 529 U.S. 473, 474 (2000), the Supreme Court stated that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Applying those standards here, jurists of reason would not find it debatable whether Claims 1 and 2(b) are without merit and whether Claim 2(a) is procedurally defaulted. Accordingly, a certificate of appealability should be denied.

17

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus [Document # 5] be denied and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4(B), the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: June 10, 2009

cc: The Honorable Maurice B. Cohill
United States District Judge